NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**APRIL ORTIZ,**

        **Plaintiff,**

v.                                                Case No. 6:13-cv-1946-Orl-18KRS

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff April Ortiz seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 15, 16, and the parties' Joint Memorandum.[1] Doc. No. 21.

### PROCEDURAL HISTORY.

Ortiz was found to be disabled under the child disability rules as a result of functional limitations arising from attention-deficit hyperactivity disorder ("ADHD") and a learning problem. R. 76. When Ortiz reached 18 years old, her condition was re-evaluated under the disability rules

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 17. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

for adults as part of the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. The SSA determined that Ortiz's disability ceased effective November 1, 2009. R. 52-54.

Ortiz sought reconsideration of this decision. R. 67. A disability hearing officer ("DHO") held a hearing on August 16, 2011. R. 68. Ortiz complained of ADHD, a specific learning disability in language arts, panic attacks and headaches. R. 69. She had difficulty remembering appointments and important dates, and she had difficulty concentrating. She also cut herself to relieve tension. When she became angry, she began destroying things in her apartment, which she shared with her boyfriend. She did not get along well with others. R. 75. After considering Ortiz's testimony and the evidence in the record, the DHO concluded that Ortiz could perform the simple, routine and repetitive tasks required for unskilled work. Therefore, the DHO found that Ortiz was not disabled. R. 77.

Ortiz asked for a hearing before an Administrative Law Judge ("ALJ"). R. 89. An ALJ held a hearing on July 25, 2012. Ortiz, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 450-79.

After considering the hearing testimony and the evidence in the record, the ALJ found that Ortiz had the following severe impairments: ADHD, an affective disorder and a mood disorder. R. 20. These impairments, singly and in combination, did not meet or equal a listed impairment. *Id.* The ALJ specifically addressed Listings 12.02, 12.04 and 12.06. He found that Ortiz had mild restrictions in activities of daily living. She had moderate difficulties in social functioning and in concentration, persistence or pace. She did not allege, and the record did not show, episodes of

NOT FOR PUBLICATION

decompensation of extended duration. R. 20-21. The ALJ also found that the evidence did not establish the "paragraph C" criteria for Listings 12.02, 12.04 and 12.06. R. 21-22.

The ALJ concluded that since November 1, 2009, Ortiz had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: "she can only understand, remember, and carry out simple instructions, can perform simple routine tasks, and can have occasional interaction with others." R. 22. In reaching this conclusion, the ALJ found that Ortiz's statements about her functional limitations were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. The ALJ summarized evidence in the record supporting this determination. R. 23-25.

Ortiz had no past relevant work. R. 25. After considering the testimony of the VE, the ALJ concluded that Ortiz could perform unskilled work available in the national economy, specifically cleaner hospital, cleaner wall, and cleaner housekeeper. R. 26. Therefore, the ALJ found that Ortiz's disability ended on November 1, 2009 and that she had not become disabled again after that date. *Id.*

Ortiz sought review of the ALJ's decision by the Appeals Council. R. 13. On October 18, 2013, the Appeals Council found no reason to review the ALJ's decision. R. 8-10.

Ortiz now seeks review of the final decision of the Commissioner by this Court.

**JURISDICTION AND STANDARD OF REVIEW.**

Ortiz having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206,

NOT FOR PUBLICATION

1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statements of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Ortiz's privacy to the extent possible.

Ortiz was born in 1991. R. 37. She attended school through the 11th grade in an ESE classroom. R. 280-81, 454. She was withdrawn from school in November 2009 due to non-attendance. R. 55.

Ortiz testified that since she turned 18 years old, she had lived in a number of places and had to move because she did not get along with the people with whom she lived. R. 459. She had angry outbursts 3 or 4 times a week. R. 460. During these outbursts, she was sometimes destructive of property. R. 466. She was depressed 2 or 3 times a week and during those times she did not want to be around people. R. 461. She had difficulty focusing on a task. R. 463. Medication helped control her condition. R. 467.

During a typical day, Ortiz would get up at about 10:00 or 11:00 a.m. R. 468. Sometimes she would help a friend get her kids ready to go out. She also did household chores and prepared food. R. 469. She would watch television, listen to music, use a computer or go to a store. She was also looking for a place to live. R. 470. She took naps during the day. R. 470. She could care for her personal hygiene. R. 470-71.

On May 19, 2009, Mardi Rosenfeld, a licensed mental health counselor, prepared an individualized treatment plan for Ortiz. Rosenfeld's diagnoses were adjustment disorder with mixed anxiety and depressed mood, ADHD NOS, and learning disorder NOS. R. 302. She rated Ortiz's global assessment of functioning ("GAF") score at 44. *Id.* She noted that Ortiz's problems included anger management, R. 304, depressive symptoms, R. 305, and impulsivity, R. 306.

On August 3, 2009, Deborah Carter, Ph.D., prepared mental functional capacity assessments after review of Ortiz's records. Dr. Carter opined that Ortiz had ADHD, a learning disability and an adjustment disorder, mixed. R. 316, 318. These conditions would result in mild restrictions of activities of daily living, and moderate difficulties in social functioning and maintaining concentration, persistence or pace with no episodes of decompensation of extended duration. R. 325. Dr. Carter opined in narrative form as follows:

> [Ortiz is] able to understand, remember, carry out routine instructions/procedures; make routine decisions; concentrate to complete things she starts. [She] is distractible in the classroom and needs a lot of support but at home, she is able to initiate, complete routine daily tasks.
>
> Able to go out alone. Travels independently. Has interests and socializes.
>
> Able to cope with routine activities but has difficulty dealing with stress and change.
>
> Overall – Despite credible evidence of ADHD, [History–Learning Disability], adjustment [disorder], [she] retains capacity to function mentally and socially to perform [activities of daily living] and to interact appropriately with others.

R. 331.

Jeanne Gifford, M.N., noted in May 2011 that Ortiz had progressed from living with family to living with her boyfriend. Ortiz was working on completing her education to prepare for a job if possible. R. 334. In a questionnaire, Gifford opined that ADHD might interfere with Ortiz's ability to concentrate 8 hours a day. R. 366. On February 8, 2012, Gifford wrote that Ortiz was in need of continuing SSI benefits. R. 387.

Maria Garcia, a friend of Ortiz, completed a function report in May 2011. Garcia wrote that Ortiz could not stay focused long enough to maintain a job. Ortiz had bad anger programs. R. 227. Garcia sometimes had to remind Ortiz to take her medicine and to care for her personal hygiene. R. 228-29. Ortiz often stayed in her room. R. 231. Ortiz could not handle stress. R. 233.

Records from primary care physicians at Central Florida Family Health Center reflect that, on March 29, 2011, Ortiz's judgment, insight and memory were intact, with no depression, anxiety or agitation. R. 357.

In June 2011, Ronald Chase, M.D., prepared mental functional capacity assessments after review of Ortiz's records. Dr. Chase opined that Ortiz had moderate limitations in activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence or pace, with no episodes of decompensation of extended duration. R. 382. He wrote a narrative functional capacity opinion, as follows:

> The claimant has the capacity to understand, remember and carry out simple instructions.
> The claimant is able to follow simple procedures in order to make appropriate decisions.
> The claimant may show occasional difficulty with more complex tasks as a result of symptoms.
> The claimant is able to sustain simple tasks and perform at an acceptable pace.

NOT FOR PUBLICATION

> The claimant retains the capacity to function mentally to perform [activities of daily living], and adapt to a simple or minimally stressful work environment and social milieu.

R. 370.

The ALJ asked the VE to assume a hypothetical person of Ortiz's age and education. The person could understand, remember and carry out simple instructions and perform simple, routine tasks. R. 474. The person could have only occasional interaction with others. R. 475. The VE testified that this person could perform the medium exertion, unskilled jobs of cleaner, hospital and cleaner, wall. R. 474. The person could also perform the light exertion, unskilled job of cleaner, housekeeping. R. 475. Each of these jobs had minimal to no stress. R. 475-76. Each of these jobs was available in the national economy. R. 474-75. In response to questions from Ortiz's attorney, the VE testified that a person who was off task 25% of the time would put the job in jeopardy. R. 477.

## ANALYSIS.

Ortiz raises only two assignments of error. First, she contends that the ALJ should have developed the record by calling on a medical expert to determine whether her condition meets or equals a listed impairment. Second, she contends that the ALJ's credibility finding was merely boilerplate language without citation to evidence in the record supporting the finding. I will address these assignments of error in turn.

*Development of the Record.*

Ortiz is correct that "[t]he ALJ has a duty to develop the facts fully and fairly." *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984) (per curiam). However, she does not identify specific evidentiary gaps in the record that should have been developed in order to provide the ALJ

7

NOT FOR PUBLICATION

with sufficient evidence to make a disability determination in this case. *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012).[2]

Counsel for Ortiz argues generally that the ALJ should have called upon a medical expert to determine whether Ortiz's condition met or equaled a listed impairment. He does not, however, identify which Listing he contends would apply in this case or cite to evidence in the record sufficient to suggest that Ortiz's condition would meet or equal that Listing.

More importantly, this argument fails because the ALJ relied on two medical experts, Dr. Carter and Dr. Chase, each of whom rendered opinions about Ortiz's mental functional ability after review of the evidence in the record. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). An ALJ does not err when, as here, he relies on the opinion of a non-examining psychologist or psychiatrist that does not contradict the opinion of an examining physician. *See Caces v. Comm'r of Soc. Sec.*, 560 F. App'x 936, 940 (11th Cir. 2014) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)).

For these reasons, I recommend that the Court find that the first assignment of error is not well taken.

*Credibility.*

In her second assignment of error, Ortiz contends that the ALJ's finding that her statements "are not credible to the extent they are inconsistent with the above residual functional capacity

---

[2] Unpublished decisions of the United States Court of Appeals for the Eleventh Circuit are cited herein as persuasive authority.

assessment" is meaningless boilerplate. If this were the only finding the ALJ made regarding Ortiz's credibility, the argument would carry more weight. However, as the Commissioner correctly responds, the ALJ supported this finding with five paragraphs in which he specifically articulated evidence in the record supporting his credibility finding. *See* R. 23-24.

The ALJ complied with the law in this circuit by articulating specific and adequate evidence in the record supporting his credibility determination. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Therefore, I recommend that the Court find that the second assignment of error is also not availing.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** this 11th day of December 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy